## JOSEPH S. REED *v.* P. B. GREGORY et ux.

1. UNKNOWN HEIRS— ART. 35, P. 546, CODE OF 1857.— When the heirs of a deceased person shall be necessary or proper parties to a suit in chancery and their names are unknown, they may be so described and made parties defendant by publication, as prescribed by art. 35, p. 546, Code of 1857, without reference to their residence, their presence or absence from the state.

2. WHEN THERE IS NO PERSONAL REPRESENTATIVE OF A VENDEE DECEASED, OWING PURCHASE-MONEY, SUIT MAY BE MAINTAINED AGAINST HEIRS. — Where the vendee of land was a non-resident of the state and died without having paid the purchase-money, having neither personal estate nor personal representative in this state, it was *held* that a bill was maintainable against his heirs, without any personal representative to enforce the vendor's lien upon the land.

APPEAL from chancery court of Winston county.   LYON, Chancellor.

*Yergers & Nugent,* for appellant.

1. It is a general rule in chancery as well as in pleadings at law that the allegations are to be taken most strongly against the pleader, and that every fact necessary to entitle the party to relief must be clearly stated and not left to inference.  In the present case, the notes of Reed and Caldwell constituted a personal liability against them.  On the death of Caldwell his personal estate was the primary fund, out of which the notes given for the purchase-money of the land were primarily payable, and his heirs at law had a right to require that his personal estate should be first exhausted before the lien on the land should be enforced.   The claim of the vendor, as against the land, was no right in or to the land itself, but a mere lien, giving him a right to have the land sold for payment of the purchase-money.  It is a very different case from that of a mortgage in which the legal title is in the mortgagee, and which is said to be not only a lien but something more.   It is a right or title to the property itself.  But the claim of the vendor for the purchase-money is a mere lien and nothing more, for the payment of the purchase-money, and as between the heir at law and the administrator the personal estate is the primary fund to be looked

to ; hence, it is necessary, before enforcing the lien against the heir at law, that the administrator should also be a party to the suit in order that the land may be exonerated by a decree against the personal representatives without multiplicity of suits or circuity of action. The case of a mortgage is the only exception to this rule, and that must proceed on the ground that he has the legal title. Story's Eq. Pl., §§ 170, 179.

2. No suit can be maintained or valid judgment rendered against a party without notice, either actual or constructive. It is against the first principles of justice as well as law to bind a party by a judgment in a suit of which he has no notice. In every instance where actual notice can be given it ought to be done, and our law has thrown so many safeguards to protect a party where constructive notice is resorted to, that it is almost impossible, if the law is followed out, for judgment to be taken against a party without his receiving actual notice. Our statute authorizes proceedings to be conducted against the "unknown heir" of a party, but in giving authority for such a proceeding it surely did not contemplate that a decree would be rendered or judgment taken against the "unknown heirs" unless the party seeking such decree would state not only that the heirs were unknown to him, but that, after the use of reasonable diligence and due inquiry, the names of the heirs could not be ascertained. Any other construction of the statute would be monstrous, for it would enable a complainant to deprive a party of his rights upon a simple allegation that his name was unknown, when, by making inquiries and exercising reasonable diligence to find out, the name of the party could readily have been ascertained and notice of the suit affecting his rights given to him.

In order to charge an indorser with notice of non-payment by the principal, notice must be given in person to the indorser or sent to his nearest post-office, and if the post-office is unknown, inquiry must be made and due diligence used to find it out.

Our statute also requires, in case of suits against non-resident parties, where constructive notice is authorized by publication, that the affidavit should state the names and residence of the non-resident defendants to whom notice must be sent through the post-office, or it must state that their residence is unknown, and upon inquiry could not be ascertained. But the provision in the statute as to decrees and publications against "unknown heirs" is to be taken in connection with the rule in chancery pleading which allowed a party to proceed to a decree, in a case where he was entitled to relief, where the bill stated that the heirs and distributees or other parties were unknown; and sought a discovery of their names in order to obtain the information to cure the defect. Story's Eq. Pl., §§ 90, 92.

3. If no administration had been taken out on the estate of Caldwell, in Mississippi, that is no excuse for proceeding without an administrator. The complainant could have applied and had an administrator appointed, or the county administrator might have been required to act.

4. The publication in this case was not sufficient to justify a *pro confesso* against the "unknown heirs" of Caldwell, because it did not appear from the bill whether the heirs were adults or minors. If the complainant did not know who the heirs were, or whether they were adults or minors, and could not have ascertained that fact upon inquiry, so as to make the proper averments in the bill, then the bill should have sought a discovery in order that the proper parties might be made to it, and if minors, that a guardian *ad litem* be appointed to protect their interests.

5. The original bill stated that Caldwell resided in South Carolina. The presumption is that his heirs also resided there, and notice through the post-office ought to have been sent to the "unknown heirs" of Caldwell, directing the letter to the post-office address of Caldwell in his life-time.

6. But it is said that Reed has no right "to complain of the decree, by reason of any errors in it affecting the

interests of the heirs of Caldwell. This is a mistake. The land was sold jointly to Reed and Caldwell, and their notes taken for the purchase-money. The decree is not for the sale of Reed's interest in the land for the payment of the purchase-money, but for the sale of the interests of both Reed and Caldwell. In such case, if the decree against the heirs of Caldwell is not valid, the land would not, of course, bring any thing like its fair value, and thus the rights of Reed would be materially affected and prejudiced by the decree.

*R. G. Rives*, for appellees.

Counsel for appellant seem to proceed upon the idea that to obtain an order of publication, as to unknown heirs of a deceased defendant, it is necessary that the affidavit should show diligent inquiry upon the part of complainant to ascertain the names and residences of such heirs.

It is true, the act of 1862, Sess. Acts, 264, provides that "it shall be the duty of the court, making any order of publication against an absent or non-resident party, to require the person applying for such order to state in his affidavit the residence of such absent or non-resident party, if the same can be ascertained."

This statute has never yet, I believe, been so construed as to meet the idea of appellant's counsel, that the affidavit itself must show that the residence could not be ascertained.

But this is not the statute proper, as I conceive, for the guidance of a court in cases where the names of the heirs, parties defendant, are unknown, for it is hardly to be supposed that a complainant could state in his affidavit the residence of a party whose name even he did not know.

This statute of 1862 was intended for cases of defendants whose names were known, and who were known to be non-residents, or absent from the state. But there is another statute, Rev. Code of 1857, p. 446, art. 35, providing for just such cases as the one at bar, to wit, where the heirs of a deceased person shall be necessary or proper parties to a

suit in chancery, and the names of such parties may be unknown to the complainant. Under this statute residence or non-residence has nothing to do with the propriety of the order of publication. The only thing necessary for the complainant to obtain an order of publication is, to make an affidavit that the names of such heirs are unknown to him. They may all live in the state; he may know exactly where they live; and yet, if he make the affidavit that the names of such heirs are unknown to him, I see not how the court, having a proper regard for the statute upon that subject, can refuse the order of publication. It will be seen, by reference to the record, that the affidavit in this cause pursues the statute in such cases provided. Now, if the order of publication was regularly made, upon a sufficient affidavit, then, upon that publication, complainants were entitled, under the statute, to such proceedings in all respects as are authorized in the case of absent defendants; and we know that, in the case of absent defendants, the proceeding authorized, after due proof of publication, and default of the defendant, is a decree *pro confesso*, which was regularly taken in this case, after proof of publication, as will appear by the record.

Again, it is urged that the executor or administrator of Caldwell, deceased, should have been made a party defendant in this cause. I admit the proposition that a resident executor or administrator must be made a party defendant in a case like this; but I insist that, in case of the death of a non-resident defendant, his executor or administrator is not a necessary party, unless, indeed, the deceased had personal property in this state subject to payment of the debt, and the personal representative himself is a resident of this state. See Reedy v. Armstead, 31 Miss. 354; Griffin et ux. v. Grovell, 42 ib. 404; Story's Eq. Pl., § 179. But let us see what course complainant could have taken in accordance with the view of appellant's counsel.

The bill of revivor or amendment made to the original bill in nature of a bill of revivor shows: "That the said

James Caldwell has departed this life, and that the names
of his personal representatives and heirs at law are un-
known." Now, then, how were those personal representa-
tives and heirs at law to be charged with notice, if made
parties defendant? The statute of 1857, Rev. Code, 546, art.
35, provides how the heirs may be made parties, and charged
with notice by publication, but there is no provision in that or
any other statute, within my recollection, for publication of
notice to an absent, non-resident or unknown administrator,
and I believe no case can be found where an executor or
administrator has ever been made a party defendant to a
cause like this, and then brought in only constructively by
publication of notice, but the personal representative of
James Caldwell, if there be one, could only be brought in,
if at all, by publication, for his name was unknown to com-
plainant, as by his bill of revivor shown. For these rea-
sons it would appear quite immaterial whether Caldwell
died intestate or testate ; certain it is from complainant's
amended bill that the name, whether executor or administra-
tor, was unknown to complainant, who, therefore, could not
possibly make him a party and give him legal notice.

We think a careful examination of the record in this
cause and of the questions raised by appellant's assign-
ment of errors will show that the court below proceeded in
this cause with due caution, and a strict observance of the
laws and rules regulating such cases, and that appellant's
objections, though at first view plausible, are not founded
in the principles governing courts of equity in this state.

SIMRALL, J. :

Two points are urged for the reversal of this decree :  1st.
That the heirs of James Caldwell, the original defendant,
having deceased, since the suit was brought, the affidavit
on which the publication order against his heirs was made,
is insufficient. The averment in the bill is that he is a
non-resident. The affidavit states that he was a resident of
South Carolina, "and that the names of his heirs at law are

unknown," etc. Art. 35, Code of 1857, p. 546, authorizes the unknown heirs of a deceased person when necessary parties defendant, to be made such by the description "the unknown heirs of the deceased," and upon affidavit that their names are unknown, publication shall be made as in case of absent defendant. The affidavit meets the terms of the law. Such proceeding seems to be authorized on the condition that the "heirs are unknown," without reference to their residence, their presence or absence from the state. The second objection is, that the personal representative of Caldwell is a necessary party, and if none has been appointed, this suit ought to be arrested until one is appointed. The general rule is, as claimed by the counsel for appellant, that in suits of this character, the administrator or executor is a proper defendant, because the personal estate is primarily liable for the debt, and the heir or devisee is entitled to relief and indemnity out of it. Smith v. Hibbard, 2 Dick, 730; Townsend v. Champernonne, 9 Price, 130; Story's Eq. Pl., § 177. The principle has been several times recognized in this court. But should a rule founded in a good reason, and having for its foundation a substantive object, be so inexorable, as when the reason of it does not apply, and there is no personal estate nor personal representive, be pushed to the extent of obstructing substantial justice? The averment is that Caldwell, the deceased, was a non-resident, that he had no estate or property here. The intent of the rule is, that, inasmuch as the personal assets are first liable, therefore the legal representative must be a defendant in order that he may contest the debt, and that the decree may bind the estate which he represents. But when the deceased was resident abroad, and had no personal estate within the jurisdiction, the necessity of a personal representative is greatly weakened. The complainant is bound to prove his debt and his lien as against the heirs. They have their day in court, and may contest the complainant's demand, in all its length. If there

are no personal assets, there can be no decree over for their indemnity.

In the circumstances of this case we think the complainant may proceed alone against the heirs. In principle it is analogous to that class of cases where the distributee has recovered in chancery the personal property on the allegation that the debts have been paid, or there are no creditors, and there is no legal representative through whom their rights may be vindicated.

One distributee may sue, in his own name, for his distributive share, if it is charged in the bill that the other next of kin are unknown. Story's Eq. Pl., § 90. So the court will proceed to decree, against the heir, if there be no personal representative in existence, if it can be done without prejudice. Story's Eq. Pl., § 91. These exceptions to the general rule have been acted upon, in order to prevent a failure of justice. As we have seen, no possible prejudice can ensue to heirs in this case, because there is no personal estate, and therefore no other fund except the land out of which the debt can be paid, to stand ahead of their liability, and protect the land.

*Decree affirmed.*